IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET T.,[1]

       Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

       Defendant.

Civ. No. 3:18-cv-01934-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Janet T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On October 16, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 14, 2015. Tr. 87. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 30, 2017. *Id.* On February 8, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 102. On October 19, 2018,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 14, 2015. Tr. 89.

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, osteoarthritis, rheumatoid arthritis, and status post craniotomy for meningioma with resulting vision loss in the right eye. Tr. 89. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 92.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions: no more than frequent balancing; no more than occasional kneeling, crouching, crawling, stooping, or climbing; no more than frequent handling or fingering with her right hand; she would need to alternate between sitting and standing at least once an hour; and due to vision loss in her right eye, Plaintiff would need to avoid unprotected heights, moving machinery, and similar hazards. Tr. 92.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a human resources director or human resources advisor. Tr. 101. As a result, the ALJ found that Plaintiff was not disabled. Tr. 101-02.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly assessing the medical opinion evidence; (2) improperly discounting Plaintiff's subjective symptom testimony.

### I. Medical Opinion Evidence

Plaintiff contends the ALJ erred by rejecting the opinions of treating provider Carol Green, FNP. Under then-applicable social security regulations governing the weight to be accorded to medical opinions, "acceptable medical sources" include licensed physicians and licensed psychologists, but not nurse practitioners, who are deemed to be "other sources." *Anthony E. v. Comm'r*, No. 1:18-cv-01518-HZ, 2019 WL 6114530, at *13 (D. Or. Nov. 16, 2019).[2] Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness.

---

[2] The parties agree that these are the appliable regulations because Plaintiff's claim was filed before March 27, 2017.

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (because physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons).

Ms. Green submitted a physical capacity statement for Plaintiff in November 2017. Tr. 733-37. Ms. Green diagnosed Plaintiff with juvenile rheumatoid arthritis, a history of meningioma with very low vision in her right eye, and osteoarthritis of the right knee and opined that Plaintiff should avoid repetitive right wrist movements, squatting, climbing, stress, and activities requiring binocular vision. Tr. 733. Ms. Green reported that Plaintiff could walk for one to two blocks before needing to rest; could stand or walk for less than two hours in an eight-hour day; and could sit for four hours in an eight-hour day. *Id.* Plaintiff would need to shift positions from sitting to standing or walking for up to 30 minutes at a time. Tr. 734. Plaintiff would need three or four additional breaks for rest in an eight-hour day, lasting for 20 to 30 minutes at a time. *Id.* Ms. Green believed that Plaintiff would miss more than three days per month. Tr. 736.

The ALJ gave limited weight to Ms. Green's opinion, finding that the record did not support the assessed limitations. Tr. 99. The ALJ found that Plaintiff's activities of daily living demonstrated that Plaintiff was capable of more activity than assessed by Ms. Green: "On a typical day, the claimant would feed her dog, take the dog outside, clean the kitchen, make her bed, shower, dress, take medication, check emails, communicate with family and friends, run errands, perform household chores, prepare for dinner, keep up the house, do yard work and plant care, read, serve dinner, visit with her son and roommate, and watch television shows." Tr. 99. An inconsistency between assessed limitations and a plaintiff's daily activities provides a valid basis for rejecting a medical provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The activities described by the ALJ are consistent with Plaintiff's own report. Tr. 254, 258.

On this record, the Court concludes that the ALJ provided a sufficient germane reason for discounting Ms. Green's opinion.

## II. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony and excluding limitations related to Plaintiff's mental health impairments from the RFC. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina*, 674 F.3d at 1112. At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that she stopped working due to the increasing severity of her rheumatoid arthritis. Tr. 119. When the ALJ asked whether it was Plaintiff's arthritis pain or her mental health issues that kept her from working, Plaintiff testified that "[t]he mental health

issues that I was having coincided with having a hard time with getting around and experiencing increased pain from the RA," and that her mental and physical issues "seem to be kind of joined together." Tr. 119-20.

Plaintiff testified that her symptoms progressively worsened and it has become difficult for her to use her right hand at all. Tr. 125. She is more easily able to type than write, but she cannot type for any length of time. *Id.* Plaintiff testified that depression has impaired her ability to focus and concentrate. Tr. 127-28.

Plaintiff testified that she receives weekly injections for arthritis, which help with the pain. Tr. 120-21. Because she takes immunosuppressant medications, Plaintiff has become more susceptible to illness. Tr. 125-26. Plaintiff takes Oxycodone for pain, which makes her drowsy and "not as sharp as I used to be." Tr. 126. Plaintiff wears a brace to for her right knee. Tr. 128. Plaintiff also takes medication for depression and anxiety, which are "very helpful." Tr. 127.

Plaintiff lives with her adult son and testified that she does not do much aside from eating and watching television during the day. Tr. 121. Plaintiff has hired a housekeeper since her brain surgery to assist with the household chores. *Id.* Plaintiff can drive, although she does not drive at night or when it is raining because she is no longer able to see from her right eye. Tr. 122. Plaintiff testified that she orders groceries online and picks them up from the store. *Id.* Plaintiff spends "a fair amount" of time on the computer each day, although she reported that she experiences headaches if she looks at the monitor for very long. Tr. 122-23. Aside from groceries, Plaintiff uses the computer for shopping and communicating with friends. Tr. 123. Plaintiff testified that reading has become difficult for her and she can only read for 15-20 minutes at a time. *Id.* Plaintiff and her son visit family and eat at restaurants together. Tr. 123.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but "the claimant's symptoms concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 96. First, the ALJ noted that Plaintiff testified that she stopped working because of her physical symptoms and not her mental health symptoms, but that she had previously told her treatment providers that she stopped working because of her mental health issues. *Id.*

This is not an accurate characterization of Plaintiff's testimony at the hearing. Although Plaintiff did testify that she stopped working due to her rheumatoid arthritis, she clarified that she also experienced an increase in her mental health issues and that the two conditions "seem to be kind of joined together." Tr. 119-20. This is consistent with Plaintiff's report to her medical providers in July and August of 2015, when Plaintiff sought treatment for depression and panic disorder. Tr. 346-47. Plaintiff reported a sudden onset of depressive symptoms, anhedonia, anergia, and amotivation and her providers noted "[s]he feels her pain as a result of her Rheumatoid arthritis is making her depression worse." Tr. 347; *see also* Tr. 348 (due to an issue with her arthritis medication, "She is very painful in her right knee, also pain all over. She feels this is having a big effect on her depression."). The records cited by the ALJ, Tr. 96-97, are entirely consistent with Plaintiff's testimony at the hearing.

The ALJ also found that Plaintiff's mental health symptoms "did not persist at the level that caused her to stop working." Tr. 97. In support of this finding, the Commissioner points to a treatment note from October 29, 2015, where Plaintiff reported improvement in her mental health conditions. Def. Br. at 3; Tr. 411. The Ninth Circuit has held, however, that it is improper to cherry-pick "occasional signs of improvement" in assessing a claimant's mental health

impairments. *Ghanim*, 763 F.3d at 1164. In this case, Plaintiff's treatment records contain considerable evidence of ongoing mental health issues, notwithstanding the positive report highlighted by the Commissioner. *See, e.g.,* Tr. 526-27 (April 2016, Plaintiff reported increased symptoms of depression, anhedonia, poor sleep, and difficulty concentrating); 541 (June 2016, Plaintiff reported increased anxiety, low energy, low motivation, and difficulty sleeping); 649-50 (December 2016, Plaintiff reported increased depression, persistent problems with low mood, emotional numbness, anhedonia, anergia, and sleep disturbances); 656 (February 2017, Plaintiff reports that her chronic pain symptoms often aggravate her depression). The Court concludes that the ALJ's finding on this point is not supported by substantial evidence.

On this record, the Court concludes that the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony and that this constitutes harmful error.

### III. Remedy

For the reasons set forth above, the Court concludes that the ALJ's decision contains harmful errors and must be reversed and remanded. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted).

On review of the record, the Court concludes that this case is not appropriate for an immediate award of benefits and that the proper resolution is a remand for further proceedings.

On remand, the ALJ should assess Plaintiff's subjective symptom testimony and either credit that evidence as true or give legally sufficient reasons for discounting that testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

It is so ORDERED and DATED this \_\_\_\_5th\_\_\_\_ day of May 2021.

 /s/Ann Aiken
ANN AIKEN
United States District Judge